IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:19-CV-00159-KDB-DCK

| | |
|---|---|
| WALTER L. HART IV, GUARDIAN AD LITEM FOR J.G., A MINOR,<br><br>Plaintiff,<br><br>v.<br><br>UNION COUNTY, GASTON COUNTY, AND WANDA SUE LARSON,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Gaston County's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 35). In this action, Plaintiff, who is the guardian for J.G., a 17 year old minor, alleges that Union and Gaston counties in North Carolina are liable through their respective Departments of Social Services ("GCDSS" and "UCDSS") under 42 U.S.C. § 1983 for heinous child abuse of J.G. that occurred in the home of a former UCDSS employee, Defendant Wanda Sue Larson ("Larson"). While the despicable abuse suffered by J.G., for which Larson and her male partner pled guilty to criminal charges, is tragic, the asserted allegations against Gaston County do not rise to a constitutional deprivation that states a *Monell* claim under Section 1983. Accordingly, after careful consideration of the motion and the parties' briefs and exhibits, the Court will **GRANT** the motion to dismiss.

I.     **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually

1

sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1) addresses whether the court has subject-matter jurisdiction to hear the dispute, *see* Fed. R. Civ. P. 12(b)(1), and Plaintiff bears the burden of proving that subject matter jurisdiction exists. *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The parties to this action agree that if Plaintiff has failed to state a claim under Section 1983 then this Court lacks subject matter jurisdiction over his claims against Gaston County. *See* Doc. No. 41 at 2.

## II. FACTS AND PROCEDURAL HISTORY

J.G. is a minor, born in 2002, who currently lives in Mecklenburg County, North Carolina. Doc. No. 29 at ¶¶ 2-3. Plaintiff Walter L. Hart, IV, also a resident of Mecklenburg County, is J.G.'s Guardian Ad Litem, who was appointed to that position by the Clerk of the Superior Court of Union County in November 2016. *Id*. ¶¶ 1, 4. Larson, at all times relevant to this action, was a

resident of Union County and an employee of UCDSS, where she was employed as a Social Worker and later a Social Worker Supervisor for UCDSS' Children's Protective Services ("CPS"), the division of UCDSS responsible for investigating reports of child abuse, neglect or improper supervision within Union County. *Id*. at ¶¶ 7, 23-24.

In February 2006, J.G. was living in his grandmother's Gaston County home while his mother, Maria Harris ("Harris"), worked in Virginia. Because of allegations of child abuse of another child in the home, J.G. was removed from that home pursuant to a non-secure custody judicial Order authorized by N.C. Gen. Stat. § 7B- 500 *et seq,* Doc. No. 20, and judicial Order for Continued Custody, Doc. No. 20-1. Upon entry of these orders, J.G. was placed in the licensed foster home of Larson and her "significant other" Dorian Lee Harper ("the Larson-Harper Foster Home"), which was located in a rural part of Union County. J.G.'s appointed guardian *ad litem* (with counsel) and Ms. Harris (with counsel) attended and participated in the judicial hearing at which the decision was made to put J.G. in the Larson-Harper Foster Home. *See* Doc. No. 29 ¶¶34, 36, 38-42, 44; Doc. No. 20, 20-1, 20-2. Because Larson was employed by Union County, supervision of the foster care home was handled by Gaston County. *Id*. at ¶¶27, 29. From February 2006 to September 2008, J.G.'s placement in the Larson-Harper Foster Home was regularly reviewed by the North Carolina State District Court, again with the attendance of J.G.'s guardian *ad litem* and counsel and Harris and her counsel at all hearings. *See* Doc. No. 20 to 20-15.

On September 25, 2008, following a two-day evidentiary hearing on September 9-10, 2008 which included the presentation of extensive evidence and witness testimony, an Order was entered pursuant to N.C. Gen. Stat. § 7B-600 granting Larson legal guardianship of J.G. *See* Doc. No. 20-13. J.G., by and through both his guardian *ad litem* and legal counsel, who were at

the hearing along with Harris and her counsel. With the entry of this guardianship order, GCDSS' custody of J.G. was terminated, but Harris' parental rights were not terminated. *Id*.

Plaintiff alleges that Larson and Harper changed over time and the Larson-Harper Foster Home became an increasingly abusive environment. More specifically, plaintiff alleges upon information and belief that GCDSS received reports of suspected abuse or neglect involving Harper on May 8, 2006, August 21, 2006, January 22, 2007, and December 27, 2007, prior to guardianship being given to Larson.[1] Post guardianship, on September 30, 2008, another child in Larson's home, L.H., said Harper hit him with a belt and threw him to the ground, which was allegedly reported to GCDSS. Then, in October 2008, Harris complained to GCDSS that Harper whipped J.G. with a belt. In response, GCDSS told Harris to make a complaint to UCDSS because J.G. was living in Union County. *See* Doc. No. 29 at ¶¶ 32-33, 70-71. Following additional complaints from Harris, GCDSS itself notified UCDSS of the October 2008 allegations of abuse against J.G. on November 18, 2008, and UCDSS and Cabarrus County DSS investigated the incident. *Id*. at ¶¶72-74.

In December 2008, L.H.'s mother complained that L.H. was improperly disciplined, and a child admitted J.G. was whipped by Harper with a belt. UCDSS and Cabarrus County investigated these allegations and found them to be "unsubstantiated" in February 2009. *Id.* at ¶¶71, 77-81. Thereafter, in 2011 a teacher reported possible abuse of another child in the home to UCDSS, which was investigated by Mecklenburg County, and in 2012 a neighbor reported to the Union County Sheriff that J.G. claimed abuse. *Id.* at ¶¶82-89. None of these reports or investigations resulted in a finding of substantiated abuse. Plaintiff alleges that the counties'

---

[1] Plaintiff does not allege any wrongdoing by Gaston County with respect to any events prior to the guardianship hearing; however, it argues that these alleged incidents provide context for the claims being pursued. *See* Doc. No. 26 at 2, fn. 1.

respective failures to uncover abuse was the result of Larson's successful efforts to use her connections, friendships and associations with GCDSS, UCDSS and others to thwart and manipulate all the investigations and handling of alleged abuse in the Larson Harper Foster Home.

Finally, on November 15, 2013 a deputy for the Union County Sheriff's Department found J.G. shackled by his ankle to the front porch with a dead chicken tied to his neck. Larson and Harper were immediately arrested and charged with child abuse. *Id.* at ¶¶92-94. In October 2014, Larson was removed as legal guardian. *See* Doc. No. 20-15. Then, in 2015, Harper plead guilty to felonious child abuse and other crimes and Larson plead guilty to willfully failing to report child abuse. Doc. No. 29 at ¶¶102, 104. Plaintiff alleges that Larson, even though she did not herself abuse J.G., actively concealed Harper's abuse of J.G. when she had a legal duty to disclose, and maliciously, recklessly, and willfully failed to intercede to protect J.G. from Harper's abuse. *Id*. at ¶¶105-107,110.

In April 2019, Plaintiff filed this action against Union County, Gaston County and Larson. Plaintiff alleges that Gaston County breached J.G.'s substantive due process rights under 42 USC §1983 by "inadequately training and supervising GCDSS social workers" "especially with respect to conflicts of interest" and that such failure:

> caused the deprivation of the minor plaintiff's rights to bodily integrity, freedom from emotional and physical abuse, freedom from undue bodily restraint, freedom to avoid potential harm, and access to and provision of appropriate and reasonable medical care; that is, Defendant Gaston County's failure to train is so closely related to the deprivation of J.G.'s rights to bodily integrity, freedom from emotional and physical abuse, freedom from undue bodily restraint, freedom to avoid potential harm, and access to and provision of appropriate and reasonable medical care as to be a proximate and the moving force that caused his ultimate injuries.

*Id*. at ¶¶111-112. More specifically, it is alleged that Gaston County is liable for GCDSS' failure to "follow up and investigate properly on reports of child abuse" described in the Amended Complaint (i.e.: one involving J.G. in October 2008 and two improper discipline and abuse allegations involving another child, L.H., on September 30, 2008 and in December 2008), which Plaintiff claims:

> were the direct result of policy and practice of training and supervision of GCDSS social workers, especially with respect to dealing with conflicts of interest when other DSS social workers are involved, in a manner and to an extent that was inadequate to prevent constitutional violations …. [and] Gaston County was deliberately indifferent to the fact its training and supervision policies, especially with respect to conflicts of interest, were inadequate to protect the J.G. and other children from violations of their constitutional rights to bodily integrity, freedom from emotional and physical abuse, freedom from undue bodily restraint, freedom to avoid potential harm, and access to and provision of appropriate and reasonable medical care, and from the known or obvious consequences [its'] failure to train its social workers and other employees adequately.

*See Id*. at ¶76. In sum, Plaintiff contends that as an alleged result of inadequate training and supervision for dealing with conflicts of interest, Larson was able to circumvent normal policies, practices and procedures, leading to GCDSS' employees' failure to discover Harper and Larson's wrongful conduct. *Id.* at ¶¶99-101.

In addition to his claims against Gaston County, Plaintiff asserts claims for substantive due process violations against Union County and Larson. *Id.*at ¶¶113-114, 118-122. Alternatively, Plaintiff asserts a claim under Art 1, § 19 of the North Carolina Constitution against both Gaston and Union Counties. *Id.* at ¶¶115-117. Finally, Plaintiff has asserted claims against Larson under North Carolina common law for gross negligence and reckless conduct. Plaintiff seeks monetary compensatory damages for all his claims.

## III. DISCUSSION

### A. Plaintiff's Claim Under Section 1983 Against Gaston County

Plaintiff asserts against Gaston County what is commonly referred to as a *Monell* claim under 42 U.S.C. § 1983 for the county's alleged inadequate training and supervision of its county's DSS social workers. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, a case filed under 42 USC §1983 provides potential remedial relief for a plaintiff who can prove that a person acting under color of state law deprived him of a right secured by federal law, including violations of federal constitutional rights, as well as certain limited federal statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *see also Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). Here, Plaintiff alleges that Gaston County violated J.G.'s substantive due process rights under the Fourteenth Amendment.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (holding that § 1983's requirement that a defendant act under "color of law" is treated as the equivalent to the "state action" requirement under the Fourteenth Amendment); *Haavistola v. Community Fire Co.*, 6 F.3d 211, 215 (4th Cir. 1993) (same).

The state action requirement "reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). "This fundamental limitation on the scope of constitutional guarantees 'preserves an area of individual freedom by limiting the reach of federal law' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (quoting *Lugar*, 457 U.S. at 936-37). *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). (emphasis added).

The "under color of state law" element imposes upon Plaintiff the burden of showing that an official policy or custom of Defendant Gaston County caused the deprivation. *Mentavlos v. Anderson,* 249 F.3d 301, 310 (4th Cir. 2001). This requirement exists because a municipality cannot be held liable under either §1983 based on the doctrine of *respondeat superior. Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy or some nature caused a constitutional tort."). Plaintiff must show that the county itself caused the constitutional violation. *See Canton v. Harris*, 489 U.S. 378, 385 (1989).

Under *Monell*, there are four theories that can be potentially pursued under Section 1983 to show an unlawful custom, policy, or practice:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir.2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)). Plaintiff claims Gaston County violated J.G.'s constitutional rights under the third theory; that is, because of its "failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens."

Beyond identifying a policy or practice that may be attributable to the governmental unit, the plaintiff must also demonstrate that, through its *deliberate* conduct, it was the "moving force" behind the injury alleged. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original). In other words, a plaintiff must show that the action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the action and the deprivation of federal rights. *Id*.

Plaintiff alleges that Gaston County was "deliberately indifferent" to the fact its training and supervision policies, especially with respect to conflicts of interest, were inadequate to protect J.G. and other children from violations of their constitutional rights. However, the Amended Complaint does not plead facts that establish that a specific deficiency in training made the constitutional violations a "reasonable probability rather than a mere possibility." *See Spell v McDaniel*, 824 F. 2d 1380, 1390 (4th Cir. 1987); *Semple v City of Moundsville*, 95 F. 2d 708, 713 (4th Cir 1999). Significantly, the Amended Complaint does not identify the particular policies that were allegedly deficient or how additional "conflicts of interest" training would have prevented the abuse suffered by J.G. (when, for example, J.G.'s independent guardian ad litem was also allegedly "manipulated" by Larson).

Nor does the Amended Complaint allege facts from which the Court could conclude that the county was "deliberately indifferent" to its training. In support of this fundamental requirement Plaintiff only offers the ultimately circular and conclusory allegation that Gaston County failed to discover the abuse in the Larson / Harper home after Larson was appointed

9

J.G.'s guardian in 2008, despite a number of reported incidents. However, no harm to J.G. was discovered during the 2008-2009 investigations of improper discipline and abuse by Cabarrus and Union Counties. Doc. No. 29 at ¶¶ 79-81. Further, the next instance of any allegation of abuse was in 2011, *Id*. at ¶ 82, and no allegations between 2008 and the discovery of the abuse in 2013 are alleged to have been known to Gaston County.

More is required to show "deliberate indifference" than the fact that the county's efforts, which included reporting of the alleged incidents to other counties for investigation, did not lead to ending the abuse. See *Spell*, 824 F. 2d at 1391("proof of a single violation … obviously cannot support an inference that the violation resulted for a municipally condoned custom of widespread practices"). Indeed, the efforts of *all* the counties that were involved plainly failed J.G., with the later horrific consequences detailed above. Simply reciting the county's failure to prevent harm to J.G. along with a conclusory allegation of causal connection between the harm and training deficiencies is not an adequate substitute for the requirement Plaintiff allege facts from which the Court could find that Gaston County *deliberately* failed to train its DSS employees such that the failure was the "moving force" that caused the constitutional injuries. A state actor's failure to take affirmative action to protect a private individual is not actionable under the Fourteenth Amendment and 42 U.S.C. §1983. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 103 L. Ed. 2d 249 (1989) and harm suffered by a child at the hands of his foster parents is not harm inflicted by state agents. *See Milburn v. Anne Arundel County Dep't of Social Servs.*, 871 F.2d 474 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989).

In summary, the Court finds that the Amended Complaint does not make a claim that "has facial plausibility" because the plaintiff has not pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Amended Complaint's factual allegations, which, among other failings, do not

identify the existing training given to Gaston County DSS workers, the alleged policies and/or procedures that were not followed and how any different training would have prevented the abuse against J.G., simply do not "move" the plaintiff's claims under 42 U.S.C. § 1983 "from possible to plausible" with respect to Gaston County. *See Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

B.   **Plaintiff's North Carolina Constitutional Claim under Art 1 §19**

Plaintiff also claims Gaston County has violated the "Law of the Land" provisions of the North Carolina Constitution, Art 1 §19, Doc. No. 29 at ¶115, based on the same alleged wrongful conduct that Plaintiff contends supports his claims under Section 1983. For the same reasons that Plaintiff has failed to sufficiently allege a federal constitutional violation, his state constitutional claim fails as well. *See Tri-County Paving Inc. v. Ashe County,* 281 F.3d 430, 436 n.6 (2002) (similar federal and state constitutional violations are interpreted the same way); *Munn-Goins v. Board of Trustees of Bladen Community College,* 658 F. Supp. 2d 713, 731 (E.D.N.C. September 17, 2009).

Further, Plaintiff's claim under the North Carolina Constitution fails because the North Carolina Supreme Court has said that when an adequate remedy at law such as a common-law tort claim is available, a plaintiff may not bring a direct claim under the North Carolina Constitution for the alleged injury. *Copper v. Dellinger*, 363 N.C. 784, 788 (2010) (quoting *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782 (1992)). Here, Plaintiff has available, adequate, and existing state remedies, including tort claims against Larson. Accordingly, Plaintiff's alternative claim under the North Carolina State Constitution will also be dismissed.

C.   **Gaston County's Statute of Limitations Defense**

Finally, in light of its ruling above, the Court need not and will not decide (but will comment briefly) on Gaston County's asserted defense that the Plaintiff's claims are barred by

the statute of limitations. In North Carolina, claims arising under 42 U.S.C. §1983 are subject to a three-year statute of limitations, *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996), but because J.G. was a minor at the time of the alleged injuries, the statute of limitations is tolled until the "disability" is removed. *See* North Carolina General Statute, §1-17. Gaston County argues that J.G.'s minor "disability" was removed when Larson was appointed his guardian in September 2008.

Under certain circumstances, the appointment of a guardian may allow the statute of limitations to run against a minor. *See Rowland v. Beauchamp*, 253 N.C. 231, 116 S.E.2d 720 (1960). However, the cases cited by Gaston County do not address the situation presented here, where defendant seeks to bar Plaintiff's claims based on the appointment as guardian of one of the alleged primary wrongdoers. In other words, Gaston County urges the Court to find that because Larson *could theoretically have sued herself and her partner in connection with criminal child abuse*, Plaintiff should be barred from asserting his claims. This argument appears to be, at a minimum, inconsistent with the intent of the limited guardianship exception, which relies on a reasonable expectation that a guardian will fulfill his or her duty to represent the minor's best interests (as well as fundamental equity and common sense). So, although the Court need not and does not reach a decision on this defense because it has found that Plaintiff has failed to state a claim against Gaston County under Section 1983, it is fair to say that the Court is skeptical of the merits of this defense.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Gaston County's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 35) is **GRANTED;**

2. The Clerk is directed to dismiss the claims against Gaston County in accordance with this Order; and

3. This case shall proceed to discovery and further proceedings on the Plaintiff's remaining claims against Union County and Larson in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: February 12, 2020

Kenneth D. Bell
United States District Judge