# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:19-CV-00159-KDB-DCK

| | |
|---|---|
| WALTER L. HART IV, GUARDIAN AD LITEM FOR J.G., A MINOR, <br><br> Plaintiff, <br><br> v. <br><br> UNION COUNTY, GASTON COUNTY, AND WANDA SUE LARSON, <br><br> Defendants. | **ORDER** |

On February 12, 2020, the Court entered an Order granting former Defendant Gaston County's Motion to Dismiss. (Doc. No. 45). In the wake of that Order, Defendants Union County and Wanda Sue Larson (only as to claims against her in her official capacity) have similarly moved to dismiss the Plaintiff's claims and for Judgment on the Pleadings (Doc. No 46). While the Court recognizes that there is a difference in the allegations against the various Defendants such that "the law of the case" is not dispositive of the pending motion, the Court is nonetheless bound by clear precedent to grant the motion. The minor J.G., on whose behalf this action has been brought, is indisputably the victim of the terrible crime of child abuse; however, the issue before the Court is whether the Union County Department of Social Services ("UCDSS") and Larson in her official capacity as a UCDSS employee are civilly liable under 42 U.S.C. § 1983 for permitting that abuse to occur. Because the county is not liable under the doctrine of *respondeat superior* and the single episode alleged cannot support a finding of constitutional deprivation that states a *Monell* claim under Section 1983, the Court will **GRANT** the motion to dismiss.

# I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id*. Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A motion for judgment on the pleadings is determined by the same standard applied to a 12(b)(6) motion to dismiss for failure to state a claim. *Burbach Broadcasting Co. of Delaware v. Elkins Radio*, 278 F.3d 401, 405 (4th Cir.2002).

# II. FACTS AND PROCEDURAL HISTORY[1]

J.G. is a minor, born in 2002, who currently lives in Mecklenburg County, North Carolina. Doc. No. 29 at ¶¶ 2-3. Plaintiff Walter L. Hart, IV, also a resident of Mecklenburg County, is J.G.'s

---

[1] This general statement of facts is in most respects repeated here for ease of reference from the Court's earlier Order, Doc. No. 45, dismissing the claims against Gaston County. To the extent the Amended Complaint alleges other facts that are of particular relevance to this motion, they are discussed below in the Court's legal analysis.

Guardian Ad Litem, who was appointed to that position by the Clerk of the Superior Court of Union County in November 2016. *Id*. ¶¶ 1, 4. Larson, at all times relevant to this action, was a resident of Union County and an employee of UCDSS, where she was employed as a Social Worker and later a Social Worker Supervisor for UCDSS' Children's Protective Services ("CPS"), the division of UCDSS responsible for investigating reports of child abuse, neglect or improper supervision within Union County. *Id*. at ¶¶ 7, 23-24.

In February 2006, J.G. was living in his grandmother's Gaston County home while his mother, Maria Harris ("Harris"), worked in Virginia. Because of allegations of child abuse of another child in the home, J.G. was removed from that home pursuant to a non-secure custody judicial Order authorized by N.C. Gen. Stat. § 7B- 500 *et seq,* Doc. No. 20, and judicial Order for Continued Custody, Doc. No. 20-1. Upon entry of these orders, J.G. was placed in the licensed foster home of Larson and her "significant other" Dorian Lee Harper ("the Larson-Harper Foster Home"), which was located in a rural part of Union County. J.G.'s appointed guardian *ad litem* (with counsel) and Ms. Harris (with counsel) attended and participated in the judicial hearing at which the decision was made to put J.G. in the Larson-Harper Foster Home. *See* Doc. No. 29 ¶¶34, 36, 38-42, 44; Doc. No. 20, 20-1, 20-2. Because Larson was employed by Union County, supervision of the foster care home was handled by Gaston County through that county's Department of Social Services ("GCDSS"). *Id*. at ¶¶27, 29. From February 2006 to September 2008, J.G.'s placement in the Larson-Harper Foster Home was regularly reviewed by the North Carolina State District Court, again with the attendance of J.G.'s guardian *ad litem* and counsel and Harris and her counsel at all hearings. *See* Doc. No. 20 to 20-15.

On September 25, 2008, following a two-day evidentiary hearing on September 9-10, 2008 which included the presentation of extensive evidence and witness testimony, an Order was entered pursuant to N.C. Gen. Stat. § 7B-600 granting Larson legal guardianship of J.G. *See*

Doc. No. 20-13. J.G., by and through both his guardian *ad litem* and legal counsel, who were at the hearing along with Harris and her counsel. With the entry of this guardianship order, GCDSS' custody of J.G. was terminated, but Harris' parental rights were not terminated. *Id*.

Plaintiff alleges that Larson and Harper changed over time and the Larson-Harper Foster Home became an increasingly abusive environment. More specifically, Plaintiff alleges upon information and belief that GCDSS received reports of suspected abuse or neglect involving Harper on May 8, 2006, August 21, 2006, January 22, 2007, and December 27, 2007, prior to guardianship being given to Larson. Post guardianship, on September 30, 2008, another child in Larson's home, L.H., said Harper hit him with a belt and threw him to the ground, which was allegedly reported to GCDSS. Then, in October 2008, Harris complained to GCDSS that Harper whipped J.G. with a belt. In response, GCDSS told Harris to make a complaint to UCDSS because J.G. was living in Union County. *See* Doc. No. 29 at ¶¶ 32-33, 70-71. Following additional complaints from Harris, GCDSS itself notified UCDSS of the October 2008 allegations of abuse against J.G. on November 18, 2008, and UCDSS and Cabarrus County DSS investigated the incident. *Id*. at ¶¶72-74.

In December 2008, L.H.'s mother complained that L.H. was improperly disciplined, and a child admitted J.G. was whipped by Harper with a belt. UCDSS and Cabarrus County investigated these allegations and found them to be "unsubstantiated" in February 2009. *Id.* at ¶¶71, 77-81. Thereafter, in 2011 a teacher reported possible abuse of another child in the home to UCDSS, which was investigated by Mecklenburg County, and in 2012 a neighbor reported to the Union County Sheriff that J.G. claimed abuse. *Id.* at ¶¶82-89. None of these reports or investigations resulted in a finding of substantiated abuse. Plaintiff alleges that the counties' respective failures to uncover abuse was the result of Larson's successful efforts to use her connections, friendships and associations with GCDSS, UCDSS and others to thwart and

4

manipulate all the investigations and handling of alleged abuse in the Larson Harper Foster Home.

Finally, on November 15, 2013 a deputy for the Union County Sheriff's Department found J.G. shackled by his ankle to the front porch with a dead chicken tied to his neck. Larson and Harper were immediately arrested and charged with child abuse. *Id.* at ¶¶92-94. In October 2014, Larson was removed as legal guardian. *See* Doc. No. 20-15. Then, in 2015, Harper plead guilty to felonious child abuse and other crimes and Larson plead guilty to willfully failing to report child abuse. Doc. No. 29 at ¶¶102, 104. Plaintiff alleges that Larson, even though she did not herself abuse J.G., actively concealed Harper's abuse of J.G. when she had a legal duty to disclose, and maliciously, recklessly, and willfully failed to intercede to protect J.G. from Harper's abuse. *Id.* at ¶¶105-107,110.

In April 2019, Plaintiff filed this action against Union County, Gaston County and Larson. Plaintiff alleges that Union County breached J.G.'s substantive due process rights under 42 USC §1983 proximately causing emotional and physical injuries. *Id.* at ¶113. More specifically, it is alleged that Union County is liable for UCDSS' failure to "follow up and investigate properly on reports of child abuse" described in the Amended Complaint, which Plaintiff claims:

> were the result of policy and practice of training and supervision of UCDSS social workers, especially with respect to dealing with conflicts of interest when other DSS social workers are involved, in a manner and to an extent that was inadequate to prevent constitutional violations by its social workers and other employees. Acting through its UCDSS, Union County was deliberately indifferent to the fact its training and supervision policies, especially with respect to conflicts of interest, were inadequate to protect J.G. and other children from violations of their constitutional rights to bodily integrity, freedom from emotional and physical abuse, freedom from undue bodily restraint, freedom to avoid potential harm, and access to and provision of appropriate and reasonable medical care, and from the known or obvious consequences of this defendant's failure to train its social workers and other employees adequately.

*See Id*. at ¶91. In sum, Plaintiff contends that as an alleged result of inadequate training and supervision for dealing with conflicts of interest, Larson was able to circumvent normal policies, practices and procedures, leading to UCDSS' employees' failure to discover Harper and Larson's wrongful conduct. *Id.* at ¶¶99-101.

Alternatively, Plaintiff asserts a claim under Art. 1, § 19 of the North Carolina Constitution against both Gaston and Union Counties. *Id.* at ¶¶115-117. Finally, Plaintiff has asserted claims against Larson under North Carolina common law for gross negligence and reckless conduct. Plaintiff seeks monetary compensatory damages for all his claims.

### III. DISCUSSION

#### A. Plaintiff's "Official Capacity" Claims Against Larson

Plaintiff has sued Larson in both her official capacity and individual capacity. However, claims against government employees in their "official-capacity" "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (as long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity). In *Graham*, the Supreme Court explained that "[t]here is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief." *Id*. at 167 n. 14 (citations omitted). Accordingly, courts have found that Section 1983 claims against defendants in their "official capacity" are duplicative of the claims against the governmental entity and thus subject to dismissal. *See Love–Lane v. Martin*, 355 F.3d 766, 783 (4th Cir.2004) (affirming District Court dismissal of school Superintendent where the court "correctly held that the § 1983 claim against [the defendant] in his official capacity as Superintendent is essentially a

claim against the Board[,] [also a defendant,] and thus should be dismissed as duplicative.");
*Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 462-63 (M.D.N.C. 2016).

Plaintiff's brief confirms that his constitutional claims against Larson "are based upon the conduct of Defendant Larson in her capacity as a CPS Social Worker, and not as a private person." Therefore, the Court finds that Plaintiff's Section 1983 claims against Larson are effectively claims against Union County and will be dismissed as duplicative.[2]

**B.     Plaintiff's Claims Under Section 1983**

Plaintiff asserts against Union County what is commonly referred to as a *Monell* claim under 42 U.S.C. § 1983 for the county's alleged inadequate training and supervision of its county's DSS social workers. Defendants' threshold argument against this claim is that because the "legal claim" is allegedly "identical" to the Section 1983 claim that the Court previously dismissed against Gaston County then the claim must be dismissed under the "law of the case" doctrine. Although the Court agrees that the "law" governing the Plaintiff's Section 1983 claims against the two counties is the same (as discussed below), the "law of the case" does not necessarily require the Court to also grant Union County and Larson's motion to dismiss. Simply put, even though the law applicable to Plaintiff's Section 1983 claims against the two counties may be the same, the result of *applying* that law to Plaintiff's claims may be different because the factual circumstances alleged against Union County and Larson are different. Specifically, unlike Gaston County, Union County employed Larson in its CPS department and is alleged to have received additional, later complaints about potential abuse in the Larson Harper Foster Home. Also, the Larson Harper Foster Home is located in Union County. Therefore, notwithstanding its earlier ruling in favor of

---

[2] The dismissal of Plaintiff's "official capacity" claims against Larson do not in any way affect Plaintiff's claims against Larson as an individual.

Gaston County, the Court finds that it should and will make an independent determination whether Plaintiff's claims against Union County and Larson may proceed.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, a case filed under 42 U.S.C. §1983 provides potential remedial relief for a plaintiff who can prove that a person acting under color of state law deprived him of a right secured by federal law, including violations of federal constitutional rights, as well as certain limited federal statutory rights. *See Maine v. Thiboutot*, 448 U.S. 1 (1980); *see also Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002). Here, Plaintiff alleges that Union County violated J.G.'s substantive due process rights under the Fourteenth Amendment.

"Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)); *see Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (holding that § 1983's requirement that a defendant act under "color of law" is treated as the equivalent to the "state action" requirement under the Fourteenth Amendment); *Haavistola v. Community Fire Co.*, 6 F.3d 211, 215 (4th Cir. 1993) (same).

The state action requirement "reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'" *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). "This fundamental limitation on the scope of constitutional guarantees 'preserves

an area of individual freedom by limiting the reach of federal law' and 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (quoting *Lugar*, 457 U.S. at 936-37). *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998). (emphasis added).

The "under color of state law" element imposes upon Plaintiff the burden of showing that an official policy or custom of Union County caused the deprivation. *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001). This requirement exists because a municipality cannot be held liable under either §1983 based on the doctrine of *respondeat superior. Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978) ("Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy or some nature caused a constitutional tort."). Plaintiff must show that the county itself caused the constitutional violation. *See Canton v. Harris*, 489 U.S. 378, 385 (1989).

Under *Monell*, there are four theories that can be potentially pursued under Section 1983 to show an unlawful custom, policy, or practice:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train [employees], that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*See Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999)). Plaintiff claims Union County violated J.G.'s constitutional rights under the third theory; that is, because of its "failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens."

9

In *Gaddy v. Yelton*, 2011 WL 3608023 (W.D.N.C. Aug 16, 2011), the court explained the proper analysis of "failure to train" claims under Section 1983. "The way in which [county workers] are trained, including the design and implementation of training programs and the follow-up supervision of trainees, is necessarily a matter of 'policy' within the meaning of *Monell*." *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4th Cir. 1987). However, in order for a municipality to be liable under a deficient training theory, a plaintiff must establish deficiencies which "rise to at least the degree of deliberate indifference to or reckless disregard for the constitutional rights of persons within [the governmental] jurisdiction." *Semple v. City of Moundsville*, 195 F.3d 708, 713 (4th Cir.1999). The plaintiff must identify a specific deficiency in the training; an allegation of general ineffectiveness is not sufficient. *See Spell*, 824 F.2d at 1390. "The deficiency also must make the occurrence of the specific violation a 'reasonable probability rather than a mere possibility'…." *Semple*, 195 F.3d at 713; *see also Spell*, 824 F.2d at 1390. Thus, there must be a "direct causal connection" between the specific deficiency identified and the alleged constitutional injury. *Semple*, 195 F.3d at 713. Significantly, as with a claim of a municipally-condoned custom, proof of a single incident of unconstitutional conduct is insufficient to prove the existence of a municipal "policy" of deficient training. *Spell*, 824 F.2d at 1391; *see City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985)*.*

Plaintiff alleges that Union County was "deliberately indifferent" to the fact its training and supervision policies, especially with respect to conflicts of interest, were inadequate to protect J.G. and other children from violations of their constitutional rights. However, the Amended Complaint does not plead facts that establish that a specific deficiency in training made the constitutional violations a "reasonable probability rather than a mere possibility." *See Spell*, 824 F. 2d at 1390; *Semple v City of Moundsville*, 95 F. 2d at 713. Indeed, the Amended

Complaint does not identify the particular policies that were allegedly deficient or how additional "conflicts of interest" training would have prevented the abuse suffered by J.G. (when, for example, J.G.'s independent guardian ad litem was also allegedly "manipulated" by Larson).

Nor does the Amended Complaint allege facts from which the Court could plausibly conclude that the county was "deliberately indifferent" to its training. Summarizing its position, Plaintiff's contention is that the failure to discover the abuse sooner was so egregious that it could only be the result of inadequate policies or training. *See* Doc. 51-1 at 4. However, more is required to show "deliberate indifference" than the fact that the county's limited efforts, which Plaintiff acknowledges did include the reporting of the alleged incidents to other counties for investigation, did not lead to ending the abuse. Indeed, a state actor's failure to take affirmative action to protect a private individual is not actionable under the Fourteenth Amendment and 42 U.S.C. §1983. *See DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 103 L. Ed. 2d 249 (1989) and harm suffered by a child at the hands of his foster parents is not harm inflicted by state agents. *See Milburn v. Anne Arundel County Dep't of Social Servs.*, 871 F.2d 474 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989).

Further, "proof of a single violation … obviously cannot support an inference that the violation resulted from a municipally condoned custom of widespread practices." See *Spell*, 824 F. 2d at 1391. While the horrific consequences of failing to sooner detect J.G.'s abuse cannot be denied, the fact remains that Plaintiff has not alleged any cases outside of the Larson Harper Foster Home in which Union County similarly failed to discover abuse connected to one of its own CPS employees or which raises "conflict of interest" issues.

Therefore, reciting the county's failure to prevent harm to J.G. along with a conclusory allegation of causal connection between the harm and training deficiencies is not an adequate substitute for the requirement Plaintiff allege facts from which the Court could find that Union County "through its *deliberate* conduct, … was the "moving force" behind the injury alleged." *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 404 (1997) (emphasis in original). The Amended Complaint's factual allegations do not identify the existing training given to Union County DSS workers, the alleged policies and/or procedures that were not followed and how any different training would have prevented the abuse against J.G.. Thus, the allegations do not "move" the plaintiff's claims under 42 U.S.C. § 1983 "from possible to plausible" with respect to Union County, *see Twombly*, 550 U.S. at 570, and Plaintiff's Section 1983 claim will be dismissed.

### C. Plaintiff's North Carolina Constitutional Claim under Art. 1, §19

Plaintiff also claims Union County has violated the "Law of the Land" provisions of the North Carolina Constitution, Art 1, §19, based on the same alleged wrongful conduct that Plaintiff contends supports his claims under Section 1983. Doc. No. 29 at ¶115. For the same reasons that Plaintiff has failed to sufficiently allege a federal constitutional violation, his state constitutional claim fails as well. *See Tri-County Paving Inc. v. Ashe County,* 281 F.3d 430, 436 n.6 (2002) (similar federal and state constitutional violations are interpreted the same way); *Munn-Goins v. Board of Trustees of Bladen Community College,* 658 F. Supp. 2d 713, 731 (E.D.N.C. September 17, 2009).

Further, Plaintiff's claim under the North Carolina Constitution fails because the North Carolina Supreme Court has said that when an adequate remedy at law such as a common law tort claim is available, a plaintiff may not bring a direct claim under the North Carolina

Constitution for the alleged injury. *Copper v. Dellinger*, 363 N.C. 784, 788 (2010) (quoting *Corum v. Univ. of North Carolina*, 330 N.C. 761, 782 (1992)). Here, Plaintiff has available, adequate, and existing state remedies, including tort claims against Larson. Accordingly, Plaintiff's alternative claim under the North Carolina State Constitution will also be dismissed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants Wanda Sue Larson and Union County's Motion to Dismiss Plaintiff's Amended Complaint and Motion for Judgment on the Pleadings (Doc. No. 46) is **GRANTED;**

2. The Clerk is directed to dismiss the claims against Union County and the claims against Defendant Larson in her "Official Capacity" in accordance with this Order; and

3. This case shall proceed to discovery and further proceedings on the Plaintiff's remaining claims against Larson in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 12, 2020

Kenneth D. Bell
United States District Judge